**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

LISA AKI MARTIN,
             Appellant,

      v.

DEPARTMENT OF DEFENSE,
             Agency.

DOCKET NUMBER
SF-0752-21-0142-I-1

DATE: August 11, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Daphne E. Barbee, Esquire, Honolulu, Hawaii, for the appellant.

Loraine Kovach-Padden, Esquire, and Ryan L. Wischkaemper, Esquire
    Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the appellant's removal for medical inability to perform. For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision as it relates to the merits of the charge, and VACATE the finding

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

that the agency met the clear and convincing standard in the whistleblower reprisal analysis.

## BACKGROUND

¶2    The appellant was employed as a GS-9 International Transportation Specialist (ITS) with the Defense Prisoner of War/Missing in Action Accounting Agency (DPAA) at Joint Base Pearl Harbor-Hickam in Honolulu, Hawaii.  Initial Appeal File (IAF), Tab 8 at 4.  DPAA is tasked with identifying and repatriating the remains of service members who died in past conflicts.  Hearing Transcript (HT) (testimony of the appellant's supervisor).  As an ITS, the appellant was responsible for, among other things, assisting DPAA employees and other officials with travel needs, such as performing passport agent duties, including collecting and processing documents containing personally identifiable information (PII) for passport applications.  HT (testimony of the appellant, testimony of the appellant's supervisor); IAF, Tab 8 at 13.  DPAA's travel department, i.e., the appellant's department, was located in building 4077 on the base.  HT (testimony of the appellant's supervisor).  Building 4077 was the only building at the agency's Hawaii facility that had been certified by the Special Issuance Agency (SIA), a component of the Department of State, as an official passport site, certifying that the building is qualified to maintain the integrity of passport materials.  *Id*.

¶3    After a verbal incident with a co-worker,[2] the appellant submitted a request for reasonable accommodation, attaching a doctor's note stating that she should no longer have any contact with her co-worker because she feared for her safety and it was causing her severe anxiety.  IAF, Tab 14 at 25-27.  As an

---

[2] The incident did not include any physical violence against the appellant, was reported to and reviewed by the appellant's supervisor, and does not appear to have resulted in discipline for either the appellant or the co-worker.  HT (testimony of the appellant's supervisor, testimony of the appellant).

accommodation, the appellant's doctor recommended that she either be transferred to building 45[3] or to another work section, or that she be allowed to telework on the days that her co-worker was in building 4077, which was approximately 9 days per pay period. *Id*. In February 2017, the agency granted the appellant's request to physically relocate to building 45 on a provisional basis, initially suspending her passport agent duties, until it formally granted her request for accommodation in November 2017, when it modified the passport duties to account for her relocation to building 45. IAF, Tab 14 at 19-20, Tab 69 at 28-30.

¶4    However, in March 2019, the agency alerted the appellant that it was reviewing her accommodation because it had "become clear that [she was] unable to perform the essential functions of [her] position" due to various incidents of misconduct, as well as numerous unscheduled absences. IAF, Tab 14 at 21-22. In response, the appellant submitted an updated medical note reiterating her need to avoid any contact with the co-worker, and the appellant's doctor conducted a site visit to buildings 45 and 4077, confirming that the appellant could not perform her duties in building 4077 as long as the co-worker was still employed. *Id*. at 4-5; IAF, Tab 8 at 24-26.

¶5    On April 13, 2020, the agency finalized its reasonable accommodation review, finding that the appellant's location in building 45 created an undue hardship because it no longer trusted her to perform the essential functions of her position without direct, on-site supervision. IAF, Tab 63 at 27-29. Specifically, the agency based its finding on several instances of misconduct by the appellant, i.e., bringing children to work, repeatedly failing to follow instructions, and insubordination, as well as the fact that she had been placed on leave restriction because she had taken 522 hours of unscheduled leave. *Id*. at 28. Thus, it

---

[3] Building 45 was approximately four or five miles away from building 4077. HT (testimony of the appellant's supervisor).

determined that there was no reasonable accommodation that would allow her to perform the essential functions of her job because her medical restrictions prevented her from working in building 4077 where she would have direct, on-site supervision. *Id*. at 27-29. Subsequently, the agency removed the appellant for medical inability to perform effective May 21, 2020, citing to the same reasons it relied on in revoking the appellant's accommodation. IAF, Tab 8 at 4-10.

¶6      The appellant filed a formal complaint of discrimination alleging that her removal was based on disability discrimination and in retaliation for her equal employment opportunity (EEO) activity. IAF, Tab 7 at 106. Once the agency issued its final agency decision denying the appellant's discrimination claims, she filed a timely Board appeal. *Id*. at 105-23; IAF, Tab 1. After holding a hearing, the administrative judge issued an initial decision affirming the appellant's removal, finding that the agency proved its charge of medical inability to perform, and denying the appellant's affirmative defenses of disability discrimination, EEO retaliation, whistleblower reprisal, due process violations, and harmful procedural error. IAF, Tab 104, Initial Decision (ID).

¶7      The appellant has filed a petition for review disputing, in part, the administrative judge's findings regarding the merits of the charge, arguing that she could perform the essential functions of her position, and that relocation to building 45 was an effective accommodation, as she could perform her duties, including "the bulk of her passport duties." Petition for Review (PFR) File, Tab 1 at 7, 13-14, 16. She also renews her affirmative defenses, including that her removal was in retaliation for her "whistleblower complaint." *Id*. at 18-32. The agency has filed a response in opposition to the appellant's petition for review. PFR File, Tab 3. The appellant then filed a reply to the agency's response, reiterating the arguments made in her petition for review. PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The agency failed to prove its charge of medical inability to perform because it failed to establish that on-site supervision was a core duty of the appellant's position.</u>

¶8      When, as here, the appellant does not occupy a position with medical standards or physical requirements or subject to medical evaluation programs, in order to establish a charge of medical inability to perform, the agency must prove a nexus between the employee's medical condition and observed deficiencies in her performance or conduct, or a high probability, given the nature of the work involved, that her condition may result in injury to herself or others. *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 25 (2014). In other words, the agency must establish that the employee's medical condition prevents her from being able to safely and efficiently perform the core duties of her position. *Id*.

¶9      In the decision letter, the agency explained that it removed the appellant because it "determined that a reasonable accommodation does not exist that would enable [her] to safely and efficiently perform the core duties of [her] position without direct, on-site supervision." IAF, Tab 8 at 9. The administrative judge, following the lead of the agency, sustained the medical inability to perform charge because he found that the agency had proven that the appellant required on-site supervision due to her repeated misconduct and unscheduled absences while working from building 45. ID at 20-25. Thus, per the agency's crafting of the removal, the issue before us is whether the agency has proven that on-site supervision is a core duty of the appellant's position which she is unable to satisfy due to her medical condition.

¶10     We find that it did not. There is no evidence in the record, nor has the agency even argued, that the appellant's position required on-site supervision as part of her core duties. There is no reference in the appellant's position description or performance plan to on-site supervision. IAF, Tab 8 at 11-17, Tab 14 at 50-77. In fact, the agency made it abundantly clear both in its documents and its testimony that the appellant was removed because it had lost

faith in her ability to perform her core duties in building 45, away from on-site supervision, due to her repeated misconduct and unscheduled absences. IAF, Tab 8 at 9, 21; HT (testimony of the appellant's supervisor, testimony of the deciding official, agency's closing arguments). However, none of this evidence supports a finding that the need for on-site supervision was a core duty of the ITS position. In other words, the need for on-site supervision was a product of the appellant's purported misconduct, and not a requirement of the position itself. Accordingly, contrary to the administrative judge's findings, we do not find that the agency proved the medical inability to perform charge because it failed to prove that the appellant could not perform an essential function of her position due to her medical condition. ID at 26.

¶11        We are aware that there is evidence in the record that an essential function of the appellant's job, i.e., passport agent duties, required her to be located in building 4077.[4] HT (testimony of the appellant's supervisor,); IAF, Tab 8 at 13; Tab 14 at 54, 64, 73, Tab 101 at 57-64. Indeed, even the appellant states that she could perform the "bulk" of her passport agent duties from building 45, essentially conceding that she could not perform all of them. PFR File, Tab 1 at 13-14. However, the agency did not base her removal for medical inability to perform on her inability to perform the full range of her passport agent duties. IAF, Tab 8 at 5-10; HT (agency's closing argument). Instead, it argued that she was medically unable to perform because she required on-site supervision, which, as noted, is not a core duty of her position, but a requirement unique to the appellant due to her repeated misconduct.[5] IAF, Tab 8 at 9; HT (agency's closing argument).

---

[4] As noted, building 4077 was the only building at the agency's Hawaii facility that had been certified by the SIA as an official passport site, and thus certain essential functions of the appellant's position could only be performed in that building.

[5] There is no suggestion in the record that the appellant's purported misconduct was caused by her medical condition. Thus, while misconduct that is the result of a medical

¶12    The Board will not sustain an agency action on the basis of charges that could have been brought, but were not. *Stuhlmacher v. U.S. Postal Service*, 89 M.S.P.R. 272, ¶ 14 (2001). Further, the Board adjudicates an agency's charge as it is described in the agency's proposal and decision notices. *Id.*; *Rackers v. Department of Justice*, 79 M.S.P.R. 262, 276 (1998), *aff'd*, 194 F.3d 1336 (Fed. Cir. 1999) (Table). Accordingly, we are bound by the basis chosen by the agency, and thus, because the agency failed to prove its charge as written, we must reverse the agency action. We make no finding as to whether the agency could have successfully removed the appellant based on her medical inability to perform the essential functions of her passport agent responsibilities or based on her purported misconduct while working in building 45. 5 U.S.C. § 1204(h) (providing that the Board is prohibited from issuing advisory opinions).

<u>The appellant failed to establish that the administrative judge erred in denying her affirmative defenses of disability discrimination and EEO retaliation.</u>

¶13    On review, the appellant disputes the administrative judge's findings denying her affirmative defenses of disability discrimination. PFR File, Tab 1 at 22-26. The administrative judge thoroughly considered the appellant's arguments and his findings are detailed, thorough, and based in the record. ID at 28-38. Accordingly, we discern no reason to disturb them. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (explaining that the Board will not disturb an administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).[6]

---

condition can support an inability to perform charge, *see Powitz v. Office of Personnel Management*, 82 M.S.P.R. 56, ¶¶ 7-8 (1999), those circumstances are not present here.

[6] The appellant also disputed the administrative judge's findings denying her claims of due process violations and harmful procedural error. PFR File, Tab 1 at 18-22. Because her arguments were thoroughly analyzed and considered by the administrative

¶14     The appellant also argues that the administrative judge erred in his analysis of her claim of retaliation for complaints of disability discrimination and requests for reasonable accommodation.  PFR File, Tab 1 at 26-30; *see Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 44.  To prove retaliation for complaints of disability discrimination and requests for reasonable accommodation, the appellant must show that her prior EEO activity was a "but-for" cause of her removal, a more stringent standard than the motivating factor standard applied by the administrative judge.  *Pridgen*, 2022 MSPB 31, ¶¶ 44-46.  However, because the appellant did not even satisfy the lesser motivating factor standard, she cannot satisfy the more stringent "but-for" standard, and thus, she was not prejudiced by the administrative judge's use of the motivating factor standard.[7]  *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (explaining that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

---

judge, and he came to well-reasoned conclusions, we discern no basis for disturbing them.  *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (explaining that the Board will not disturb an administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

[7] The administrative judge applied the framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04 (1973) to the appellant's claim of disability discrimination based on her disabled status.  ID at 34-38.  In *Pridgen*, 2022 MSPB 31, ¶¶ 40, 42, the Board explained that for status-based disability discrimination claims, an appellant is entitled to some relief, i.e., injunctive relief, if she satisfies the motivating factor standard, but in order to obtain full relief, she must show that disability discrimination was a but-for cause of the personnel action. Because we agree with the administrative judge that the appellant is not a qualified individual with a disability, it was not prejudicial to the appellant to not evaluate her claim under a motivating factor standard of proof.  *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (explaining that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

<u>Because the appellant failed to establish that she made a protected disclosure under 5 U.S.C. § 2302(b)(8), the subsequent finding that the agency met the clear and convincing standard must be vacated.</u>

¶15  In the initial decision, the administrative judge found that the appellant did not establish that she made a protected disclosure when she objected to a request from a sergeant major (SM) to change travel authorizations for a group of individuals to accommodate off-base lodging. ID at 42-45. Specifically, he found that the appellant did not have a reasonable basis for believing that her disclosures evidenced a violation of law, rule, or regulation, or constituted a gross waste of funds, noting that the appellant did not identify any law, rule, or regulation the SM allegedly violated, and any difference in costs was nothing more than a debatable expenditure. ID at 45. Nevertheless, the administrative judge continued in the whistleblower reprisal analysis, finding that if the disclosure were protected, the appellant would meet the contributing factor standard, but the agency would prove by clear and convincing evidence that it would have removed her absent any whistleblower activity. ID at 45-48.

¶16  On review, the appellant disputes the administrative judge's findings, asserting that "[i]t was clear [that she] felt there was fraud and waste going on and if she had to adhere to travel rules, so did her supervisor." PFR File, Tab 1 at 31. The appellant offers nothing more than conclusory assertions that she disclosed "waste and fraud," but she fails to explain with any specificity how her disclosure evidenced the type of misconduct set forth in section 2302(b)(8)(A).[8]

---

[8] To the extent that the appellant asserts on review that the agency retaliated against her in violation of 5 U.S.C. § 2302(b)(9)(C) because she filed an Inspector General (IG) complaint, the appellant clarified during the prehearing conference that her whistleblower reprisal claim was "based on the whistleblowing disclosure itself involving a disclosure of waste and fraud . . . rather than her contact with the IG." IAF, Tab 100 at 4. In the prehearing order, the administrative judge included a summary of matters to be decided, including "[w]histleblower retaliation based on a disclosure of fraud and waste to Sergeant Major (SM) . . . about the SM's improper decision to authorize travel expenditures. . . ." *Id*. at 4. The administrative judge provided the parties with an opportunity to file objections or exceptions to the prehearing order. *Id*.

*Id*. at 30-32. Accordingly, as the administrative judge correctly applied the law to the facts of this case to find that the appellant had not established that she made a protected disclosure under 5 U.S.C. § 2302(b)(8)(A), we discern no basis for disturbing his finding. *Crosby*, 74 M.S.P.R. 98, 106; *Broughton*, 33 M.S.P.R. 357, 359.

¶17    However, once the administrative judge made this finding, he should not have continued in the whistleblower protection analytical framework, because the Board may not proceed to the clear and convincing evidence test unless it has first determined that the appellant established a prima facie case of whistleblower reprisal. *Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014), *aff'd*, 623 F. App'x 1016 (Fed. Cir. 2015). Accordingly, because the appellant did not establish a prima facie case of whistleblower reprisal, we vacate the administrative judge's findings that the agency would have met the clear and convincing evidence standard.

## ORDER

¶18    We ORDER the agency to cancel the removal action and restore the appellant to her GS-9 International Travel Specialist position effective May 21, 2020. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶19    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel

at 18. The appellant, who was represented both below and on review, did not file any objection, nor does she expressly argue on review that the administrative judge mischaracterized the whistleblower reprisal claim. *Id*.; PFR File, Tab 1 at 30-32. Accordingly, the appellant is precluded from raising this argument on review. *See Gallegos v. Department of the Air Force*, 121 M.S.P.R. 349, ¶ 16 (2014) (finding that the appellant's failure to object to the administrative judge's rulings which precluded her from raising her affirmative defenses after she waived them prohibited her from raising the defenses on review).

Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶20     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶21     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶22     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS**[9]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you

were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[10]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                         /s/ for
                               _____
                               Jennifer Everling
                               Acting Clerk of the Board

Washington, D.C.


# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.